native, on account of Mr. Holker's permanent residence in another state; but being adopted, the plaintiff is bound by it. and cannot, even on the principles of the Pennsylvania practice, avail himself of Mr. Holker's casual visit to Philadelphia, without discontinuing the first action. What, indeed, would be the condition of the defendant, who is arrested, if a different construction were to prevail? He might be ready for trial; he might be able to prove that there was no cause of action; he might be desirous to avoid trouble and expense by a prompt confession of judgment; or he might be the principal, and the non-appearing defendant merely a surety, so that he could derive no advantage from the arrest of his colleague;—and yet he would be exposed to an indefinite term of imprisonment. or be held with his bail for an indefinite period in suspense, at the pleasure of a plaintiff, who should chuse to calculate upon any remote possibility of bringing all the defendants into court. The injustice and oppression to the defendant, furnishes a strong argument against the allowance of such a privilege to the plaintiff.

It is conceded, however, by the plaintiff's counsel, that the motion would be irregular, unless leave is given to file common bail for Mr. Holker, as of April term, 1792, when the original action was instituted. But why should such a retrospect be allowed? Mr. Holker was not then arrested; and shall the court countenance a mere fiction;—a fiction not indispensable to justice, unknown to the law, and directly adverse to the truth of the case, exhibited for a number of years upon the record? No:—I am an enemy to every species of fictions. The fictions which have been incorporated into the law by long usage, (and, I believe, the cases of ejectment and common recovery afford the only fictions recognized in America) must be sustained; but as far as I can prevent the introduction of novelties of this nature, I shall be assiduous to do so. All the entries upon the record were true and regular at the time of making them. There is, therefore, no error to amend; but the court is asked, for the convenience of the United States, arbitrarily to abolish the writ and its return, the declaration, the issue, and the continuances; and not only to undo all that has been previously done, but by an entry of common bail, to ingraft, in effect, this falsehood upon the record, that Mr. Holker was arrested in April, 1792. But after all, I will not anticipate an opinion, upon a case in which an alias shall be regularly taken out, and continued, from term to term: though my present impressions are unfavorable, even on that ground to the plaintiff's doctrine. The multiplication of suits, the perplexity of entries, and the oppressive vexation of successive bail bonds, each for the full amount of the demand, are effects that could not be easily tolerated in the administration of justice. I have not heard, during the discussion, of any principle, or usage, of law, that would reconcile them to my mind: but this is not the foundation of the present decision; for, the irregularity in the teste and return of the alias capias is a sufficient reason to reject the plaintiff's motion.

The rules discharged.[4]

CHASE, Circuit Justice. The whole proceeding is to my mind unintelligible and irregular. There is only one of the parties to the contract, and only one of the defendants named in the writ before the court; and no process of outlawry has been prosecuted against the others; how shall we proceed to give judgment? Again: to what is the plea of non assumpsit to be applied? Is it, that the appearing defendant did not assume himself, or that he did not jointly assume with the other defendants? And how comes the plea of the statute of limitations to be added, without the leave of the court? But the counsel will have time to reflect upon these difficulties. For, the jury are not sworn, even in this irregular state of the record, to try the issues between the parties; and therefore, the court, on its own authority, will direct the juror last qualified to be withdrawn.

A juror was, accordingly, withdrawn, and the action continued till the next term.

---

## Case No. 15,993.

### UNITED STATES v. PARKER.

[See Case No. 15,735.]

---

UNITED STATES (PARKER v.). See Cases Nos. 10,750 and 10,751.

---

## Case No. 15,994.

### UNITED STATES v. PARKHILL.

[2 Wkly. Notes Cas. 604, note.]

District Court, W. D. Pennsylvania. June 15, 1875.

INTERNAL REVENUE OFFICERS—VISITORIAL POWERS —EXAMINATION OF NATIONAL BANKS.

[Visitorial powers are not conferred upon the internal revenue officers, under Rev. St. §§ 3177. 5241, whereby they would be authorized to examine the checks of a national bank.]

In this case the defendant [the cashier of the Monongahela National Bank of Brownsville, Pennsylvania] refused to allow a deputy collector of internal revenue to examine the bank's checks. On the trial the district judge directed the jury to find a verdict pro forma for the plaintiff, subject to the opin-

---

[4] The cause (which was indebitatus assumpsit) came on for trial before CHASE and PETERS, Justices, at April term, 1798, when, after the opening was commenced by Rawle, for the plaintiff, it was discovered that the plea of "non assumpsit" was entered in short, and that the statute of limitations had, also, been pleaded; though the jury were only sworn to try the issue, and not the issues, joined between the parties.